IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WENDI WADDY, *et al.*, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 10 CV 6158 |
| ) | Judge Blanche M. Manning |
| THE BOARD OF EDUCATION OF THE ) | |
| CITY OF CHICAGO, *et al.*, ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Mary Stack is one of several former teachers at Chicago's Deneen Elementary School who were removed from their positions after Deneen was designated a "turnaround" school, which is a school that chronically underperforms academically. All of the plaintiffs have alleged that they were terminated based on their race (African-American) and/or age and thus were subjected to illegal discrimination. Ms. Stack is the only plaintiff who was a tenured teacher. She also alleges that, as such, she was entitled to procedural due process that she did not receive. The Board of Education seeks to dismiss Ms. Stack's procedural due process claim. For the reasons that follow, the motion to dismiss is denied.

**BACKGROUND**

The following facts from the complaint are accepted as true for purposes of the motion to dismiss. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Deneen Elementary School is a neighborhood school on Chicago's south side serving students from kindergarten through eighth grade. On February 24, 2010, the Chicago Board of Education designated Deneen as a "turnaround" school based upon its academic underperformance. In a turnaround, a school's entire faculty and staff are removed with the hope that the radical change improves students' performance. Under the turnaround plan (which the Board of Education hired defendant AUSL to carry out), the faculty and staff of Deneen were removed and the school closed on June 30, 2010. The reconstituted Deneen reopened the following day, on July 1, 2010.

The plaintiffs were all staff members at Deneen who were removed as part of the turnaround. Although removed teachers may seek to be rehired, none of the plaintiffs were rehired. Instead, according to the plaintiffs, AUSL and the Board of Education replaced them with inexperienced individuals with less seniority and qualifications.

Among the staff members removed was plaintiff Mary Stack. Ms. Stack was a tenured teacher with 30 years' experience who earned performance evaluations of "Superior" and "Excellent." Ms. Stack alleges that as a tenured teacher, she had a property right in continued employment and, under the Due Process Clause, was entitled to "some process through which

she could challenge that decision, provide information relevant to that decision, or to show that she could perform the job duties of open or vacant positions." Third Amended Complaint [123-1] ¶ 203. She further alleges that the "Board in fact hired new probationary teachers into positions that Plaintiff Stack was lawfully qualified to teach and could perform the job duties of." *Id.* ¶ 206.

In Count X of the Third Amended Complaint, Ms. Stack brings a claim against the Board of Education alleging that her constitutional rights have been infringed in violation of 42 U.S.C. § 1983. Specifically, she alleges that the Board of Education's failure to conduct a hearing "before or at the time the time of her dismissal" violated the Due Process Clause of the Fourteenth Amendment. In her charge of discrimination cross-filed with the Illinois Department of Human Rights and the EEOC, she asserted that her termination occurred on February 24, 2012, the date on which the Board of Education voted to reconstitute Deneen. However, the reconstitution plan approved by the Board of Education on that date (attached as exhibit A to the Third Amended Complaint [123-1]) states that reconstitution would occur on July 1, 2012. In addition, she alleges that she continued to work as a teacher at Deneen until the end of the 2009-10 school year, at which time she was "honorably discharged." Third Amended Complaint [123-1] ¶¶ 11, 73. In light of Ms. Stack's allegation that she continued to work at Deneen until honorably discharged at the time of the reconstitution, she has not plausibly suggested a termination date of February 24, 2010, but, rather, a termination date of June 30, 2010, the final day before reconstitution at the end of the 2009-10 school year.

The Board of Education has filed a motion to dismiss Count X. In support, the Board of Education argues that Count X should be dismissed because Ms. Stack has not plausibly suggested that her status as a tenured teacher gave her a property interest in her continued employment.

## ANALYSIS

### I. Standard of Review

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Seventh Circuit explained that this "[r]ule reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (internal quotations omitted).

However, a complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). In *Ashcroft v. Iqbal,* the Supreme Court stated that a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## II. Due Process Claim (Count X)

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Thus, a procedural due process claim involves a two-part analysis: First, a court looks at whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, then the court must assess what process was due." *Bhalerao v. Illinois Dep't of Fin. and Prof'l Regulations*, 834 F. Supp. 2d 775, 786 (N.D. Ill. 2011).

The court shall begin its analysis of Ms. Stack's due process claim by reviewing the statutory basis upon which she contends her property interest is grounded. It shall then analyze whether layoff policies the Board has adopted might give rise to any property interests.

### A. Property Right Arising from Statute

The property interest Ms. Stack alleges in her complaint is the "property right in her continued employment." Third Amended Complaint [1-1] ¶ 202. She identifies the source of that property interest as 105 Ill. Comp. Stat. 5/34-84, the provision of the Illinois School Code under which teachers in Chicago become tenured. *Id.* The defendant Board of Education responds that despite her status as a tenured teacher, Ms. Stack cannot establish a property interest in her continued employment.

Ms. Stack's argument that her tenured status provided her with a property right in her continued employment is foreclosed by the decision of the Illinois Supreme Court in *Chicago Teachers Union v. Board of Education of the City of Chicago*, 963 N.E.2d 918 (Ill. 2012). One of the issues addressed in *Chicago Teachers Union* was whether § 34-84 gave teachers a property right in their jobs such that they had the right to be rehired after a layoff. *Id.* at 924-25. The Illinois Supreme Court rejected the Chicago Teachers Union's argument that a tenured teacher has a substantive right to continued employment by virtue of the teacher's status as tenured under § 34-84. *Id.* at 924. To the contrary, the Supreme Court held, the legislature had clearly expressed its intent that tenured teachers be subject to layoffs when it adopted an amendment to the School Code in 1995 that eliminated all references to layoffs and recalls and the concept of "reserve teachers" that were previously found in § 34-84. *Id.* at 924-25.

The Supreme Court found that the elimination of the language signaled the legislature's intent to change the law in that respect. *Id.* at 925. It also contrasted the language of amended § 34-84 with the provision governing tenure for teachers in cities smaller than Chicago, which still provides to "laid-off tenured teachers, with satisfactory or better evaluations . . . a right to recall." *Id.* (citing 105 Ill. Comp. Stat. 5/23-12). On the whole, the Illinois Supreme Court determined that "[h]ad the legislature intended to provide substantive rehire rights to laid-off tenure Chicago public school teachers, it would have done so, as it did for all other school districts in Illinois." *Id.* at 926.

Ms. Stack's brief fails to acknowledge the decision in *Chicago Teachers Union*. Instead, she relies on *Mims v. Board of Education* to support her argument that she had a property interest in continued employment. *See Mims v. Board of Education*, 523 F.2d 711, 715 (7th Cir. 1975) ("we think that plaintiffs had a property interest in their continued active employment. . . . Plaintiffs at least were entitled to an opportunity to attempt to demonstrate that they were capable of performing the work assigned to the six temporary employees."). However, *Mims* is inapposite because it involved the property interest that civil servants, not tenured teachers, have in continued employment. *Id.* Moreover, it predates by 20 years the 1995 amendments to the School Code that eliminated all references to layoffs and recalls from § 34-84.

The court acknowledges that *Chicago Teachers Union* was decided in the context of teachers laid off for economic reasons, as opposed to the plaintiffs here who were removed following a turnaround under 105 Ill. Comp. Stat. 5/34-8.3(d)(4). However, the purported source of the teachers' property interest in both cases is the same—tenure as set out in § 34-84. Therefore, the Illinois Supreme Court decision that § 34-84 creates no property interest in continued employment dooms the plaintiffs' claims here same as it doomed the claims in *Chicago Teachers Union*.

Alternatively, Ms. Stack argues that § 34-8.3(d)(4)—the statutory provision that provides for school turnarounds—creates a property interest for all displaced employees to be "replaced and *reassigned*, not dismissed outright." Sur-Response [155-1] at 4. That statutory provision reads as follows:

> (d) Schools placed on probation that, after a maximum of one year, fail to make adequate progress in correcting deficiencies are subject to the following actions by the general superintendent with the approval of the board, after opportunity for a hearing:
> (1) Ordering new local school council elections.
> (2) Removing and replacing the principal.
> (3) Replacement of faculty members, subject to the provisions of Section 24A-5.
> (4) Reconstitution of the attendance center and replacement and reassignment by the general superintendent of all employees of the attendance center.

105 Ill. Comp. Stat. 5/34-8.3(d).

Section 34-8.3(d)(4) of the Illinois School Code merely gives a school district's superintendent and school board the power to reconstitute a school as one of several options to improve schools that have been placed on probation. It does not contain any mandatory terms and, thus, is an "authorizing or enabling provision" much like § 34-18(31), which allows school

Page 4

boards to establish procedures governing the layoff or reduction in force of employees and any right to be recalled. *See Chicago Teachers Union*, 963 N.E.2d at 925. The Illinois Supreme Court held that § 34-18(31) "merely [conferred] a power which the Board could exercise or not, as it saw fit" and thus "cannot be the basis of a substitute right to be rehired after an economic layoff." Because § 34-8.3(d)(4) also contains "authorizing or enabling" rather than mandatory terms, it likewise cannot be the basis of a right to continued employment.

### B. Property Right Arising from Board Policy

Although Ms. Stack has not identified any statutory source of a property interest in continued employment, the Board of Education's discussion of the decision in *Shegog v. Board of Education*, No. 99 CV 211, 2000 WL 555504, at *2 (N.D. Ill. May 4, 2000) ("public school board policy, may create a legitimate expectation of continued employment even where the authorizing statute does not"), led the court to direct the parties to address whether Chicago Public Schools Policy 07-1219-PO1 gives rise to any property rights. Policy 07-1219-PO1 delineates a series of steps the Board of Education shall take when "a determination is made that a tenured teacher's services are no longer required at an attendance center." Policy 07-1219-PO1 (attached as Exhibit A to the Board of Education's Sur-Reply Brief [157-1]) § 3. The steps begin with notice to the teacher that she is being removed, providing the teacher with a list of vacancies for which she is qualified, a period of 30 days after the notice of removal to interview at schools of her choosing, and possible reassignment or interim appointments. The policy also allows the Board to layoff teachers unable to secure a permanent appointment, and to recall terminated teachers.

The Board of Education contends that Policy 07-1219-PO1 cannot give rise to the property interest in continued employment asserted by Ms. Stack because the policy governs post-removal rights, while Ms. Stack contends that she "had a right to an opportunity *prior* to her termination to demonstrate her ability to fill vacant positions." Response [139-1] at 5. However, the policy itself does not purport to limit its applicability to post-removal rights. For instance, under § 3, a tenured teacher is entitled to notice "[w]hen a determination is made that a tenured teacher's services are no longer required at an attendance center." The parties have not identified or cited to any authority discussing when the notice of removal must be delivered. But it is logical that notice of removal would be made prior to actual removal, and thus prior to removal the Board would also be obligated to provide tenured teachers with a list of vacancies and the opportunity to interview. In the absence of additional information about the policy, the court cannot rule out that the policy may provide rights to tenured teachers prior to their removal. Accordingly, the Board of Education has fallen short of its burden on a motion to dismiss to show that Ms. Stack has not plausibly suggested a property interest under Policy 07-1219-PO1.

The Board of Education argues that even if Policy 07-1219-PO1 gives rise to a property interest, Ms. Stack's due process claim must still be dismissed for two reasons. First, it argues that in *Shegog v. Board of Education*, No. 99 CV 211, 2000 WL 555504, at *4 (N.D. Ill. May 4, 2000), a prior but similar version of the policy was found not to entitle teachers displaced by a

layoff to individualized hearings. But in that case, the court focused on the justification given for the layoffs, specifically, whether they were based on

> a drop in enrollment, the educational focus of the attendance center is changed such that available teaching positions cannot accommodate some or all current regularly certified and appointed teaching staff, or when an attendance center is subject to actiosn taken as a result of remediation, probation, reconstitution, or educational crisis . . .

*Id.* at 3 (quoting Chicago Public Schools Policy 97-0723-PO2). The court concluded that none of these bases for a layoff involved person-specific issues, and therefore did not require individualized hearings. *Id.* at 3-4. Ms. Stack's claim is not that the reconstitution of Deneen was unjustified under Board policies but, rather, that the district failed to reassign her to a position for which she was qualified. Issues "regarding a teacher's tenure, qualifications, conduct, and competency" are the type of person-specific inquiries that would be proper subjects of an individualized hearing. *Id.* at 4. Accordingly, *Shegog* does not support the Board's position that Ms. Stack cannot demonstrate any basis for an individualized hearing.

Second, the Board contends that Ms. Stack's due process claim must be dismissed based on her failure to include in her complaint any factual allegations that the Board violated the policy in a way that denied her a property interest without due process. Sur-Reply [157-1] at 3 ("Plaintiff's allegation that such a hearing is a Constitutional right, despite her deliberate omission of any allegation that the Board violated the Layoff Policy, is fatal to her due process claim in Count X"). However, under notice pleading Ms. Stack need only plausibly suggest the denial of her rights to due process. *See Ashcroft,* 556 U.S. at 678. She need not allege the facts that would prove her claim, and has satisfied the pleading standard by alleging that the Board filled positions for which she was qualified, and thereby denied her a property interest in continued employment without due process.

## CONCLUSION

For the reasons stated, Ms. Stack has plausibly suggested a due process claim and, therefore, the Board of Education's motion to dismiss Count X [128-1] is denied.

ENTER:

DATE: December 6, 2012

*Blanche M. Manning*
Blanche M. Manning
United States District Judge